# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT J. GALLAGHER, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 4:20-cv-01083-SEP |
| SANTANDER CONSUMER USA INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. Doc. [48]. For the reasons set forth below, the motion is granted. Also before the Court is Plaintiff's Motion to Certify Class, Doc. [57], which will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. On March 28, 2011, Plaintiff Robert J. Gallagher executed a Retail Installment Loan Contract to purchase a 2007 Chevrolet Trailblazer from dealer Lou Fusz Buick GMC in St. Louis, Missouri. Doc. [50] ¶ 1. The Loan Contract was assigned to Defendant Santander Consumer USA Inc. *Id.* ¶ 3. When Plaintiff purchased the vehicle, a Certificate of Title was issued listing Santander as lienholder. *Id.* ¶¶ 4-5. On April 11, 2017, Plaintiff made the final payment on his loan via an online payment of noncertified funds from his Regions Bank account. *Id.* ¶¶ 7-8, 10. Under Santander's Title Release Procedure, payments made by certified check, cashier's check, MoneyGram, Western Union, and money orders are considered certified funds, and payment made in any other form is considered noncertified. *Id.* ¶¶ 10-11. Santander's Title Release Procedure states that if payment on a loan is made by certified funds, the lien is released at the time of payment. *Id.* ¶ 12. Where a loan is paid off by noncertified funds, however, such as a personal check, online payment, or debit card payment, the loan is not considered paid in full, and the lien is not released for a brief period of time pursuant to the "Good Funds Rule." *Id.* ¶¶ 13, 15-16. The Title Release Procedure defines the "Good Funds Rule" delay as a period of 10 to 20 days during which Santander waits to release the lien in order to ensure that payment is not stopped by the paying party or otherwise reversed prior to the lien release. *Id.* ¶ 16. Santander uses the Good Funds Rule to protect itself

1

against payoff reversal that can occur when payment is received via noncertified funds. *Id*. ¶ 18. A final payment made with noncertified funds can be returned for a variety of reasons, including insufficient funds in an account, the customer's account being closed, or the customer cancelling the payment. *Id*. ¶ 20. On average, Santander finds that a customer's payoff has been reversed within 8 to 12 days after the payment was made, though the period, which Santander refers to as the "return time," is sometimes longer or shorter. *Id*. ¶ 21. As testified to by Amanda Van Haren, Santander's Director of Titles, if Santander "received the payoff reversal and the title release has already gone out . . . [Santander] will lose interest in the collateral." *Id*. ¶ 18. Van Haren testified that the Good Funds Rule is a "standard practice in the industry with regard to payoffs of consumer loans." *Id*. ¶ 19. Pursuant to its Title Release Procedure, Santander deems a loan satisfied 15 calendar days after a customer pays off their loan with noncertified funds. *Id*. ¶ 23. Here, because Gallagher made his last online payment on April 11, 2017, Santander considered the lien on his vehicle satisfied on April 25, 2017, which is the date the lien was executed and sent to Plaintiff. *Id*. ¶ 25. In the five years since he paid off the loan, Plaintiff has not attempted to sell the vehicle, and he still has the original lien release. *Id*. ¶ 31.

On June 24, 2020, Plaintiff filed this action on behalf of himself and others similarly situated, alleging that Santander violated Missouri law by failing to timely release the lien on Gallagher's vehicle as required by Mo. Rev. Stat. §§ 301.640(1) and (4)). Plaintiff argues that, pursuant to the statute, he should have received the lien release within 5 days from the date he authorized his online payment to Santander, and alleges that Santander's failure to comply with Missouri's vehicle lien release law "wrongfully interfered with [his] property rights by encumbering his property beyond what Missouri law allows," "clouded the title to his vehicle," prevented him "from selling his vehicle at his choosing as a vehicle with a clean, free, and clear title," and risked "adversely affect[ing] [his] credit rating and credit score[.]" Doc. [1-1] ¶¶ 47-49. Gallagher seeks to certify a class of Missouri residents who also suffered from the same alleged misconduct. *Id*. ¶¶ 15, 16.

Santander filed a motion for summary judgment on Gallagher's individual claim, asserting that it did not violate the Missouri vehicle lien statute by waiting until it knew the noncertified funds Plaintiff used to pay his loan had cleared Plaintiff's bank and the lien was actually "satisfied" for purposes of the statute before it released the lien and sent the certificate of title to Gallagher. Doc. [48] at 2.

**LEGAL STANDARD**

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

**DISCUSSION**

The only claim asserted in the Complaint is that Santander violated Section 301.640 of the Missouri Revised Statutes by allegedly failing to timely release the lien on Plaintiff's vehicle after he paid off his loan.[1] The parties' dispute concerns the interpretation of a provision of the Missouri statutes about vehicle lien releases, Mo. Rev. Stat. § 301.640, which provides in relevant part:

> 1. **Within five business days after the satisfaction of any lien** or encumbrance of a motor vehicle or trailer, the lienholder shall release the lien or encumbrance on the certificate, on a separate document, or electronically under section 32.096 and any rules and regulations adopted thereunder, and mail or deliver the certificate or a separate document to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate or such documentation. The release on the certificate or separate document shall be

---

[1] The statute was amended in pertinent part in 2007. *See* Motor Vehicles, 2007 Mo. Legis. Serv. S.B. 82.

notarized.  Each perfected subordinate lienholder, if any, shall release such lien or encumbrance as provided in this section for the first lienholder.  The owner may cause the certificate to be mailed or delivered to the director of revenue, who shall issue a new certificate of ownership upon application and payment of the required fee.  **A lien or encumbrance shall be satisfied for the purposes of this section when a lienholder *receives payment in full* in the form of certified funds, as defined in section 381.410, or when the lienholder *receives payment in full* electronically or by way of electronic funds transfer, whichever first occurs.**

4. Any lienholder who fails to timely comply with subsection 1 or 2 of this section shall pay to the person or persons satisfying the lien or encumbrance liquidated damages up to a maximum of two thousand five hundred dollars for each lien.  Liquidated damages shall be five hundred dollars if the lienholder does not comply within five business days after satisfaction of the lien or encumbrance.  Liquidated damages shall be one thousand dollars if the lienholder does not comply within ten business days after satisfaction of the lien or encumbrance.  Liquidated damages shall be two thousand dollars if the lienholder does not comply within fifteen business days after satisfaction of the lien or encumbrance.  Liquidated damages shall be two thousand five hundred dollars if the lienholder does not comply within twenty business days after satisfaction of the lien or encumbrance.  If delivery of the certificate or other lien release is made by mail, the delivery date is the date of the postmark for purposes of this subsection.

Mo. Rev. Stat. §§ 301.640(1), (4) (emphases added).

Under the statute, a lien must be released within five business days after "satisfaction" of the lien.  *Id*.  The statute goes on to define satisfaction as occurring "when a lienholder receives payment in full in the form of certified funds, as defined in section 381.410, or when the lienholder receives payment in full electronically or by way of electronic funds transfer."  *Id*.  Plaintiff argues that Santander received payment in full, and the lien was thus satisfied, on the day he transmitted his final online payment, April 11, 2017, and, pursuant to the statute, he should have received his lien release by no later than five business days after that date.  Doc. [59] at 4.  Because Santander did not release the lien until April 25, 2017, Gallagher alleges that Santander violated the statute and owes liquidated damages to him and all similarly situated Missouri residents.  Santander argues that it did not receive payment in full for purposes of the statute until the electronic funds transmitted by Plaintiff were no longer at risk of being recalled, and that it timely released the lien after sufficient time had passed to ensure the funds had cleared.  Doc. [61] at 2.

Substantive issues in this diversity case under 28 U.S.C. § 1332 are governed by state law. *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Statutory interpretation is substantive rather than procedural because it concerns the meaning and application of state substantive law. *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015) ("Interpreting state statutes, this court applies that state's rules of statutory construction"). Accordingly, the Court follows Missouri law in interpreting the statute.

The interpretation of the disputed statutory provision is a matter of first impression. The Supreme Court of Missouri has never construed the provision, and Missouri appellate courts have examined the statute in only two cases, neither of which addressed the question before the Court. *See Bridges v. First Nat. Bank in St. Louis*, 613 S.W. 2d 716 (Mo. Ct. App. 1981) (resolving dispute between a divorced couple regarding which of them was entitled to receive title to their vehicle); *Moore v. Firstar Bank,* 96 S.W. 3d 898 (Mo. Ct. App. 2003) (resolving who was entitled to receive the title to a vehicle). Neither the parties nor the Court has identified parallel statutes in other states, so there are no decisions from outside this jurisdiction to which the Court could look for persuasive guidance. Because it is a matter of first impression in Missouri, the Court must attempt to predict how the Supreme Court of Missouri would rule. *See Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 957-58 (8th Cir. 2014); *Travelers Prop. Cas. Ins. Co. v. Nat'l Union Ins. Co. of Pittsburg, Pa.*, 621 F.3d 697, 707 (8th Cir. 2010).

Under Missouri law, issues of statutory interpretation are questions "of law, not fact." *Roland v. St. Louis City Bd. of Election Comm'rs*, 590 S.W. 3d 315, 318 (Mo. 2019). "The goal of statutory interpretation is to give effect to the General Assembly's intent 'as reflected in the plain language of the statute at issue.' " *Mo. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 607 S.W.3d 728, 732 (Mo. 2020) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. 2014)); *see also Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 665 (Mo. 2010) ("The primary goal of statutory interpretation is to discern the legislature's intent as evidenced by the text and to consider the words in their plain and ordinary meaning."). Words in a statute are read not in isolation but rather in the context of the whole statute to determine their plain and ordinary meaning. *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. 2014).

The Court must "interpret[ ] statutes in a way that is not hyper-technical but, instead, is reasonable, logical, and gives meaning to the statute and the legislature's intent as reflected in

5

the statute's plain language." *St. Louis Rams LLC v. Dir. of Revenue*, 526 S.W.3d 124, 126 (Mo. 2017); *Ivie v. Smith*, 439 S.W.3d 189, 202–03 (Mo. 2014) (same). A statute's language is "clear and unambiguous" if "the statute's terms are plain and clear to one of ordinary intelligence." *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. 1988). "Absent express definition, statutory language is given its plain and ordinary meaning, as typically found in the dictionary." *State v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. 2001). The rules of statutory construction apply if the statute is ambiguous. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. 2019). When turning to the canons, "[t]he rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately," but rather, "the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." *Parktown Imports, Inc. v. Audi of Am., Inc.,* 278 S.W.3d 670, 672 (Mo. 2009).

Plaintiff argues that the statutory text clearly and unambiguously supports his position. *See* Doc. [59] at 4-5. He asserts that when he made final payment on the loan by online payment[2] it was at that moment that the "lienholder" [Santander] "receive[d] payment in full electronically or by way of electronic funds transfer," and the lien was "satisfied for the purposes of [the statute]." *Id*. at 5 (quoting Mo. Rev. Stat. § 301.640 (1)). He argues that a person of ordinary intelligence knows the meaning of "receives" and "payment in full" and it is obvious that, under the plain language of the statute, he made "payment in full" by an online payment, *i.e.*, "electronic funds transfer," on April 11th and Santander "receive[d]" the funds that same day, at which time the lien was "satisfied." *Id*. at 5-6. He contends that there is only one possible reading of the statute, and applying § 301.640 as written, it is clear that he paid off the loan on April 11, 2017, after which Santander had a duty to release his lien within five business days. Because it did not, Santander violated the statute and its motion for summary judgment must be denied. *Id*.

---

[2] Plaintiff describes his method of payment in multiple ways, including "noncertified funds," Doc. [59] at 1, "online payment," *id*. at 5, and "electronic funds transfer," *id*. at 6. He asserts that it is "axiomatic" that an online payment is an "electronic funds transfer." *Id*. That position finds support in the Electronic Funds Transfer Act, which defines "electronic fund transfer" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). Because the parties do not dispute the matter, the Court assumes for the purposes of this Order that the online payment made by Plaintiff was an "electronic funds transfer" as that term is used in Mo. Rev. Stat. § 301.640(1).

6

Gallagher's position is intuitively appealing.  None of the individual words in the relevant part of the statute seems ambiguous when considered in isolation.  For example, "payment" means the "performance of an obligation by the delivery of money . . . in partial or full discharge of the obligation."  Black's Law Dictionary 1243 (9th ed. 2009); *see also Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017) (Where a statute does not define a term "we give the term its plain and ordinary meaning as found in the dictionary.").  "Receive" means "to take possession or delivery of."  Webster's Third New International Dictionary 1894 (2002).  "Satisfaction" means "the fulfillment of an obligation, esp., the payment in full of a debt."  Black's Law Dictionary 1460 (9th ed. 2009).  Deploying those terms in an ordinary manner, it is beguilingly simple to say that Gallagher paid his debt in full when he electronically authorized the transfer of funds from his bank to Santander's; the lien was thus satisfied at the time of that authorization; and a release was due within five days.

But statutory language "cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989); *see also Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. 2014) ("Words in a statute are not read in isolation but, rather, are read in the context of the whole statute to determine their plain and ordinary meaning."); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Context is a primary determinant of meaning").

Invoking statutory context, Santander argues that, while it is indeed clear that a lien must be released within five business days after a loan is paid in full, it is not at all clear that the lienholder "receives payment in full . . . by way of electronic funds transfer" at the moment such a transfer is initiated by a payor.  Mo. Rev. Stat. §§ 301.640(1).  Rather, Santander contends, "payment in full" is not "receive[d]" until the funds are no longer susceptible to recall, as electronically transferred funds typically are (e.g., due to insufficient funds, a closed account, or action by the payor) for a number of days after a transfer is initiated.  *See* Doc. [61] at 3-4.  According to Santander, when one considers the provision in context, "payment in full" can only be deemed "received" when a lienholder is secure in its possession of the funds.  *Id*. at 3.

The Court is persuaded that the statute is susceptible to more than one interpretation.  While it plainly states that a lien is satisfied when the lienholder "receives payment in full" by

certified funds or by electronic transfer, it does not define what it means to "receive[ ] payment in full." And given the variety of available methods of payment, and the different mechanics of each of those methods, what it means to "receive[ ] payment in full" is not obvious. Where a statute is ambiguous, Missouri law requires this Court to "appl[y] established rules of statutory construction," and "resolve[ ] ambiguities . . . by determining the intent of the legislature and by giving effect to its intent whenever possible." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009).

The textual basis for Santander's argument is that the phrase "[a] lien or encumbrance shall be satisfied for the purposes of this section" is followed by twin phrases, each of which describes a method for "satisfaction" of a lien: (1) "when a lienholder receives payment in full in the form of certified funds,"[3] or (2) "when the lienholder receives payment in full electronically or by way of electronic funds transfer . . . ." Mo. Rev. Stat. § 301.640(1). Santander argues that it would make no sense for the first phrase to provide that a lien has been satisfied when the lienholder has received "certified funds"—i.e., funds that pose no risk of nonpayment—but for the second to provide that a lien has been satisfied as soon as an electronic funds transfer is initiated, even though the funds could still be recalled for some time thereafter.

The hallmark of "certified funds" is their immediate availability. They are verified funds that are guaranteed by a third-party institution rather than the payor, and thus, the receipt of the funds by the payee is assured at the moment of transfer. *See Imports, Etc., Ltd. v. ABF Freight System, Inc.*, 162 F.3d 528, 530 (8th Cir. 1998); *see also* Dictionary of Banking and Finance (Jerry M. Rosenberg ed. 2002) (certification of funds means that a bank is "providing assurance that the funds are immediately available"). By contrast, an online payment of noncertified funds is subject to reversal for various reasons; the recipient has no assurance that the money is available at the time of the initial transfer. Thus, Santander argues, whereas "payment in full" by certified funds may be "received" at the moment of transfer, "payment in full" by electronic payment of noncertified funds is not "received" until sometime after the initiation of the transfer, when those funds come under the exclusive control of the payee. Reading the text in context,

---

[3] The term "certified funds" is defined in Mo. Rev. Stat. § 381.410 as "United States currency, funds conveyed by a cashier's check, certified check, teller's check, as defined in Federal Reserve Regulations CC, or wire transfers, including written advice from a financial institution that collected funds have been credited to the settlement agent's account."

Santander contends, it is clear that the legislature did not intend to require a lienholder to release a lien before the funds are in its actual possession.

The interpretive canon *noscitur a sociis* provides some support for Defendant's argument. That canon "counsels lawyers reading statutes that words may be known by the company they keep." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 287 (2010); *see also* Scalia & Garner, 167 (A court can discover the "true meaning" of a phrase by comparing that part of the statute to "the other sections, and finding out the sense of one clause by the words or obvious intent of the other."). Put another way, a phrase's meaning is "ascertained from the words around it." *Babbitt v. Sweet Home Chapter of Cntys. For a Great Or.*, 515 U.S. 687, 702 (1995); Scalia & Garner at 63 ("[C]ourts should interpret a text in light of the surrounding text . . . .").

Because the phrase "[a] lien or encumbrance shall be satisfied for the purposes of this section" precedes a description of two methods by which a person may satisfy a lien, the legislature apparently intended for those two methods to equally serve the purpose of satisfying a lien—i.e., extinguishing a property right. Per the statute, a lien is satisfied when "*a lienholder receives payment in full* in the form of certified funds," *or* when "*a lienholder receives payment in full* electronically or by way of electronic funds transfer." Mo. Rev. Stat. § 301.640 (1)). There is a presumption that "identical words used in different parts of the same act are intended to have the same meaning." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004). And both methods require that the lienholder *receive* payment in full—not that a payor *authorize*, *provide*, or *tender* the payment.

Applying established principles of statutory construction, this Court does not believe that the Supreme Court of Missouri would adopt Gallagher's proposed interpretation of the statute. The fact that "receiv[ing] payment in full" by the first method involves possession of guaranteed funds does suggest that the legislature intended a lienholder who "receives payment in full" by the second method also to be irrevocably in possession of funds. That the legislature made *receiving* payment—not authorizing or tendering it—the trigger for satisfaction reinforces that interpretation. And the fact that the effect of "receiv[ing] payment in full" by either method is identical and itself irrevocable—i.e., the extinguishment of a property right—provides further reinforcement. Lacking any state court authority, following the Missouri Supreme Court's instruction to interpret statutes in a way that "is reasonable, logical, and gives meaning to the

9

statute," the Court finds that a lienholder "receives payment in full" when the lienholder is irrevocably in possession of the full amount owed. The Court finds that interpretation to be faithful to "the legislature's intent as reflected in the statute's plain language," *St. Louis Rams LLC*, 526 S.W.3d at 126, understood "in the context of the whole statute," *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d at 122.

As a practical matter, the Court's holding means that a lienholder does not "receive[ ] payment in full" as soon as a payor authorizes an electronic payment. Because the lien on Gallagher's vehicle was therefore not "satisfied" on the day he authorized his online payment, Santander did not violate the statute by waiting to release the lien until the funds were no longer subject to recall. As Santander did not violate the statute, it is entitled to judgment as a matter of law on Gallagher's claim, and its motion for summary judgment is granted. *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 730 (8th Cir. 2007) (Summary judgment "is warranted if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.").

Because the Court has found that Santander's actions were not in violation of the statute, it follows that Plaintiff's motion to certify a class of Missouri residents who were injured by Santander's alleged violation of the statute necessarily fails. *See In re Milk Products Antitrust Litigation*, 195 F.3d 430 (8th Cir. 1999) (Where the sole named plaintiff's claims have failed on the merits at summary judgment, a class cannot be properly certified.).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [48], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify Class, Doc. [57], is **DENIED**.

A separate judgment accompanies this Memorandum and Order.

Dated this 30th day of September, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE